IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 06-00033-001 |
| Plaintiff, | |
| vs. | **REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE** |
| JUDITH A.F. MATEO, | |
| Defendant. | |

Pending before the court are (1) a petition and supporting declaration (together, the "Violation Petition") filed on May 29, 2024, (2) a Supplemental Declaration filed on July 10, 2024, (3) a Second Supplemental Declaration filed on August 19, 2024, and (4) a Third Supplemental Declaration filed on September 16, 2024. *See* ECF Nos. 468, 477, 485 and 487. Together, these filings allege the Defendant violated her supervised conditions as follows:

1. Tested positive for the use of methamphetamine on sweat patches worn during the following periods, (i) May 2-7, 2024, (ii) June 10-14, 2024, (iii) July 8-12, 2024, (iv) July 26-30, 2024, (v) August 20-23, 2024, and (vi) August 23-27, 2024;

2. Failed to report for drug testing on September 5, 2024;

3. Tested positive for methamphetamine on December 28, 2023, and January 17, 2024, as noted on an Informational Report filed on March 12, 2024 (ECF No. 459);

4. Tested positive for methamphetamine based on a sweat patch worn from April 16-23, 2024, as noted on a second Informational Report filed on May 18, 2024 (ECF No. 466).

On August 20, 2024, and on October 1, 2024, the Defendant entered "no contest" pleas to all the above violations. *See* Mins., ECF Nos. 486 and 489. Having heard argument from the parties, the court now issues this Report and Recommendation with regard to the disposition for the

supervised release violations.

## BACKGROUND

**A.    Conviction and Sentence**

On October 14, 2008, the Chief Judge sentenced the Defendant to 51 months' imprisonment for Count 1 (Conspiracy to Distribute Methamphetamine Hydrochloride) and to 60 months' imprisonment for Count 4 (Use of a Firearm During and in Relation to a Drug Trafficking Crime), to be served consecutively, followed by five years of supervised release for Count 1 and three years for Count 4, to be served concurrently. *See* Am. J., ECF No. 172. Among various conditions of supervised release, the Defendant was ordered to participate in a substance abuse program to include testing and to submit truthful and complete monthly reports. *Id.* at 3-4.

The Defendant's original term of supervised release commenced on September 12, 2014. *See* ECF No. 254.

**B.    Post-Conviction Conduct**

On November 24, 2014, an informational report was filed advising the court that the Defendant tested positive for methamphetamine and subsequently admitted that she used "meth" while attending a party. At the request of the probation officer, the court took no action on the reported violation. *See* Order, ECF No. 260.

On December 19, 2014, the court modified the Defendant's supervised release conditions to include the performance of 50 hours of community service as a sanction for a positive drug test on November 20, 2014. *See* ECF No. 268.

On November 26, 2014, the Defendant was accepted to participate in the DORE program. *See* Mins., ECF No. 257. She received numerous sanctions while in the program, but she finally completed the program on February 22, 2017, *see* Mins., ECF No. 364, and had her term of supervised release reduced by one year. *See* Mot. to Reduce and Order, ECF No. 365.

On March 2, 2018, the Chief Judge revoked the Defendant's supervised release term and sentenced her to time served with 42 months of supervised release. *See* Revoc. J., ECF No. 393. The revocation was based on her testing positive for methamphetamine, failing to report for drug testing, failing to attend a counseling session, failing to notify the probation officer prior to changing

her residence, failing to following the instructions of the probation officer, and failing to submit her monthly supervision report. *Id.* and Report and Recomm., ECF No. 387.

On July 23, 2018, an informational report was filed after the Defendant tested positive for methamphetamine and subsequently admitted to using "ice." *See* ECF No. 401. At the request of the probation officer, the court took no action on the reported violation. *See* Order, ECF No. 402.

On October 4, 2021, the Chief Judge again revoked the Defendant's supervised release term a second time and sentenced her to nine months' imprisonment, with credit for time served, and 33 months of supervised release. *See* Revoc. J., ECF No. 424. The revocation was based on her failure to appear for drug tests, failure to submit a monthly supervision report, submission of diluted urine specimens failure to provide valid urine specimens, failure to participate in substance abuse treatment, testing positive for methamphetamine and admission to drug use. *Id.* The court re-imposed similar conditions of supervised release requiring the Defendant to refrain from the unlawful use of controlled substances and to submit to drug testing. *Id.*

On October 19, 2023, the court revoked the Defendant's supervised release term for the third time and sentenced her to time served (about four months), followed by 28 months of supervised release. *See* Third J. Revocation, ECF No. 455. Revocation was based on her repeated admission to the use of "meth" and "ice," positive test for methamphetamine use, and failure to report for three drug tests. *Id.*

The Defendant's current term of supervised release commenced on October 19, 2023. *See* Violation Pet'n at 1, ECF No. 468.

**CURRENT VIOLATIONS**

**A.    Filing of Informational Report**

On March 12, 2024, the probation officer filed an Informational Report alleging the following violations:

- December 28, 2023 - tested presumptive positive for methamphetamine at LRC; confirmed by lab testing; Defendant later signed admission form that she used "meth" on said date
- January 17, 2023 - tested presumptive positive for methamphetamine use; confirmed

by lab testing; Defendant later signed an admission form that she used "meth" on January 15, 2024.

**B.     Progress Hearings**

On March 21, 2024, the Defendant appeared before the court as summoned. *See* Mins., ECF No. 463. The probation officer reported that the Defendant is tested five times per month and she has tested negative on all subsequent tests. The probation officer also stated that the Defendant participates in weekly treatment sessions with her counselor. Without objection, another progress hearing was set for April 23, 2024.

On April 23, 2024, the parties appeared in court, and the probation officer reported that the Defendant attended all her weekly counseling sessions with WestCare and tested negative on her drug trusts, however, the Defendant failed to report for a drug test on April 13, 2024 (a Saturday) but subsequently reported on April 16, 2024. *See* Mins., ECF No. 463. The urine sample was questionable so it was sent to the lab for analysis, and a sweat patch was applied that day and removed prior to the hearing. With regard to the missed drug test on April 13, 2024, Ms. Kottke explained the Defendant has been assisting her 90-year old mother, who was selected as a Festival of Pacific Arts ("FestPac") delegate, and there was a mandatory meeting for all delegates scheduled on that date. Ms. Kottke also stated that she intends to file a motion requesting permission for the Defendant to travel to Hawaii from June 6-16, 2024, to attend FestPac. The court stated that if the Defendant wants to attend that festival, then she must demonstrate that she can comply with her conditions of supervised release. Without objection, the matter was continued to May 21, 2024.

**C.     Filing of Second Informational Report**

On May 18, 2024, the probation officer filed a Second Informational Report, *see* ECF No. 466, alleging that the lab results for a sweat patch worn by the Defendant from April 16-23, 2024, was received on May 6, 2024, and confirmed a positive result for methamphetamine. The probation officer met with the Defendant on May 7, 2024, and the Defendant thereafter signed an admission form that she used "meth" on April 15, 2024, citing personal stressors as the cause for her relapse.

///

**D.     Further Court Hearing**

On May 21, 2024, the Defendant came before the court. *See* Mins., ECF No. 467. The probation officer reported that his office would be filing a formal violation petition because the results for a drug sweat patch worn by the Defendant from May 2-7, 2024, had returned as positive for methamphetamine, so she faces mandatory revocation. The probation officer noted that the Defendant has been testing negative on urinalyses since April 23, 2024, and attends weekly sessions with WestCare. Defense counsel stated that the Defendant is enrolled in the Path to Freedom program, which assists veterans. The Defendant stated that her counselor is thinking of increasing her treatment sessions. The court stated it would await the filing of the violation petition and encouraged the Defendant to get engaged in treatment and attend self-help meetings because her current once a week sessions were not working and she is heading down the noncompliance path again. The court suggested she consider enrolling in the New Beginnings residential program.

**E.     Filing of Violation Petition**

On May 29, 2024, the probation officer filed the instant Violation Petition, *see* ECF No. 468, which incorporated the allegations from the two prior Informational Reports and alleged the positive result for methamphetamine use on a drug testing sweat patch worn from May 2-7, 2024, as reported at the last hearing.

At the request of the probation office, the court ordered that a summons issue for the Defendant to appear and answer to the alleged violations.

**F.     Initial Appearance and Subsequent Hearing**

On June 7, 2024, the Defendant appeared before the court as summoned. *See* Mins., ECF No. 474. The court appointed the Federal Public Defender to represent the Defendant. *Id.* and Appointment Order, ECF No. 475. Ms. Lujan asked for a continuance of the matter since she had not spoken with the Defendant about the Violation Petition. Additionally, because the allegations included a positive sweat patch, Ms. Lujan suggested that the matter be continued until Ms. Kottke's return to Guam, since Ms. Kottke was in communication with the expert witness for the various challenges raised by others regarding the sweat patches. The probation officer stated that he is awaiting the results for a urinalysis test administered on May 30, 2024. The probation officer also

corrected the Defendant's Criminal History Category reflected on the violation worksheet from I to II. Without objection, the court scheduled the Defendant's answering on the Violation Petition for July 18, 2024, at 10:30 a.m. Additionally, the court set a status hearing for June 20, 2024.

On June 20, 2024, the parties appeared for the status hearing. *See* Mins., ECF No. 476. The probation officer reported that the urine sample collected on May 30, 2024, that was presumptive positive was sent to the lab for analysis and the results were negative for controlled substances. The probation officer also stated that he was still awaiting the results for a urine sample collected on June 10, 2024, and for a sweat patch worn from June 10-14, 2024. The court continued the matter to July 18, 2024, for answering, since Ms. Kottke would be back on Guam by then.

**G.     Filing of Supplemental Declaration**

On July 10, 2024, the probation officer filed a Supplemental Declaration, *see* ECF No. 477, alleging that a sweat patch was applied on her on June 10, 2024, removed on June 14, 2024, and sent to the lab for analysis. Results received on June 25, 2024, indicated the patch was positive for methamphetamine. On July 2, 2024, the probation officer confronted the Defendant with the test results, and the Defendant stated she wanted to discuss the matter with her attorney.

**H.     Additional Court Hearing**

On July 18, 2024, parties returned to court. *See* Mins., ECF No. 478. The Defendant entered denials and asked for an evidentiary hearing to challenge the sweat patch results. The court scheduled an evidentiary hearing for September 10, 2024, and ordered defense counsel to file a notice of defense so the government could decide whether to retain an expert for the hearing. The probation officer reported that the Defendant has been referred to attend more treatment, and the Defendant agreed to so attend. The probation officer stated that he was still awaiting the results of further tests.

The court later set a status hearing for August 22, 2024.[1] *See* Order, ECF No. 480.

///

---

[1] The hearing was later advanced to August 20, 2024, at the request of defense counsel *See* ECF Nos. 481-82.

### I. Filing of Second Supplemental Declaration

On August 19, 2024, the probation officer filed a Second Supplemental Declaration, *see* ECF No. 485, alleging that results from two sweat patches worn (i) from July 8-12, 2024, and (ii) from July 26-30, 2024, were positive for methamphetamine. The probation officer asked that the court address the new violations at the August 20th status hearing.

### J. No Contest Pleas

On August 20, 2024, the Defendant appeared before the court with her counsel and entered no contest pleas to all allegations asserted against her. *See* Mins., ECF No. 486. The probation officer stated that the Defendant attends weekly individual sessions with WestCare. Defense counsel also noted that the Defendant is in the Path to Freedom program with WestCare and is trying to get into Oasis but may need a new assessment with Guam Behavioral Health and Wellness Center ("GBHWC"). Ms. Kottke also stated that the Defendant is interested in participating in DORE again. The court vacated the evidentiary hearing and set arguments on disposition for September 17, 2024. The court allowed the Defendant to remain on release.

### K. Filing of Third Supplemental Declaration

On September 16, 2024, the probation officer filed a Third Supplemental Declaration, *see* ECF No. 487, alleging that the results of two sweat patches worn by the Defendant from August 20-23, 2024, and from August 23-27, 2024, came back positive for methamphetamine. Additionally, the Defendant failed to appear for a scheduled drug test on September 5, 2024. The probation officer spoke with the Defendant the following day and instructed her to report to LRC for a drug test. The Defendant so reported, and the drug test was presumptive positive for methamphetamine use. The Defendant denied using illicit substances, so the urine specimen was sent for lab analysis, and the results were then pending.[2]

### L. Further Court Hearings and Detention

On September 17, 2024, the Defendant appeared in court, and Ms. Lujan requested that the matter be continued until Ms. Kottke's return. *See* Mins., ECF No. 488. The probation officer

---

[2] The results later returned as negative.

reported that in addition to the violations in the Third Supplemental Declaration, the Defendant only attended one treatment session in September and did not make arrangements with TOGHE for transportation to her sessions. The probation officer requested that the Defendant be detained. Ms. Lujan asked that the Defendant be allowed to remain on release because she was hoping to obtain housing through the VA. The court ordered the Defendant to be detained until the next hearing, which was set for October 1, 2024.

On October 1, 2024, the parties returned to court, and the Defendant entered no contest pleas to the allegations in the Third Supplemental Declaration. *See* Mins., ECF No. 489. Ms. Kottke explained the Defendant missed the drug test as alleged because the person she had asked for a ride failed to pick her up timely, but the Defendant reported the following day for a drug test as instructed. Counsel and the probation officer presented their respective arguments as to an appropriate sentence for the violations. Having reviewed the record herein and considered the parties' arguments, the court now issues this Report and Recommendation.

## LEGAL STANDARD

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation). Revocation is mandatory if a defendant refuses to comply with drug testing or tests positive more than three times over the course of one year. *See* 18 U.S.C. § 3583(g)(3) and (4).

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

According to the Third Amended Violation Worksheet notes that the allegations are Grade C violations, with a guidelines range of 3-9 months of imprisonment, based on the Defendant's criminal history category of I, followed by 19-25 months of supervised release. *See* Third Am. Violation Worksheet at ¶¶7-10 and 13, ECF No. 487-1. The Defendant is subject to mandatory revocation.

This is the Defendant's fourth revocation proceeding. Her conviction for Count 1 was a Class A felony, so the Defendant faces a maximum revocation sentence of five years pursuant to Section 3583(e)(3). She received approximately 20 months' imprisonment for prior revocation sentences (six months and three days for the first revocation, nine months for the second revocation, and about four months for the third).

Defense counsel claimed that a high end sentence will do nothing to benefit the Defendant, so she recommended a sanction of four to six months' imprisonment. Ms. Kottke stated that she discussed a possible "max out" sentence with the Defendant, but she is not ready for that. Counsel asserted that the Defendant's ultimate goal is to get into a residential program, and she was able to have a re-screening done with GBHWC while detained at the Department of Corrections. Ms. Kottke argued that the Defendant just was not ready in the past to give residential treatment a chance, but she's ready to do so now. Defense counsel acknowledged that while the Defendant faltered with regard to her drug recovery, she still remain engaged in other areas, such as her continued educational opportunities with the Veteran's Administration. Ms. Kottke maintained that the Defendant had not reached the point where a high end sentence was warranted, especially since the Defendant would not receive any treatment services while detained at the Department of Corrections. If the court were inclined to impose a sentence at the high end of the guidelines range, Ms. Kottke asked that the court impose a "max out" sentence of a one year and one day, to end the Defendant's cycle of being in and out of jail.

The probation officer recommended a sentence of 12 months. He stated that because this was the Defendant's fourth revocation, a sentence higher than the guidelines range was warranted. The government concurred in the graduated sanction.

The court notes that the Defendant has been on supervised release since September 12, 2014. Her original supervised release term was five years, but she's since doubled that term. At some point, the Defendant has to choose to either live her life drug free or live her life as an addict. She should not expect the probation officer to "babysit" her forever. Hopefully, the Defendant is sincere when she says that she is serious about trying to enroll in a residential treatment program, because she may need more intensive treatment services than what she received through outpatient sessions.

The court is willing to give the Defendant that chance to get into a residential program to increase her chance of successfully reintegrating back into society. Being housed for a lengthy period at the Department of Corrections with no access to substance abuse treatment will not benefit the Defendant or society. She will not be released any less of an addict than when she was first detained. While this court has given the Defendant numerous chances in the past, the court firmly believes in providing those who truly want to change their lives with access to drug treatment. Again, the Defendant's violations are all related to her drug addiction, and she has not committed a new criminal offense. To her credit, she has not absconded from supervision nor has she failed to appear for court hearings. Based on the nature of the violations, the court recommends a sentence of three months' imprisonment and 25 months of supervised release. The recommended sentence is reasonable and not harsher than necessary to provide just punishment and adequate deterrence.

## RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the Chief Judge (1) accept the Defendant's admissions to violations noted above, (2) revoke the Defendant's supervised release term and (3) sentence her to three months' imprisonment, with credit for time served,[3] followed by 25 months of supervised release.

A disposition hearing shall be held on November 21, 2024, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Oct 29, 2024

### NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**

---

[3] The Defendant has been detained since September 17, 2024, giving her 66 days of confinement credit as of the proposed disposition hearing date of November 21, 2024.